Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY LLP**
Email: aapton@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel.: (213) 985-7290

*Attorneys for Plaintiff Carey Lowe*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREY LOWE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TANDEM DIABETES CARE, INC., JOHN F. SHERIDAN, BRIAN B. HANSEN, and LEIGH A. VOSSELLER,<br><br>Defendants. | Master File No. '23CV1657 H    BLM<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: |

Plaintiff Carey Lowe ("Plaintiff"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to their own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Tandem Diabetes Care, Inc. ("Tandem" or the "Company") with the United States Securities and Exchange Commission (the

1

"SEC"); (b) review and analysis of Tandem's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Tandem securities between August 3, 2022 and November 2, 2022 inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2. Defendants provided investors with material information concerning Tandem's projected revenue and sales for the year ending 2022. On August 2, 2022, Tandem estimated annual sales "to be in the range of $835 million to $845 million, which represents an annual growth of 19 percent to 20 percent compared to 2021."

3. Defendants provided these statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material adverse facts. This caused Plaintiff and other shareholders to purchase Tandem's securities at artificially inflated prices.

4. The truth emerged on November 2, 2022 when Tandem, in an investment call and Form 8-K filing, revised its 2022 forecast downward to $800 to $805 million. Reasons stated for the scale back included increased competition in the diabetes care sector, complications due to the COVID pandemic, and macroeconomic factors such as inflation.

5.      Investors and analysts reacted immediately to Tandem's revised guidance. The price of Tandem's common stock declined dramatically. On November 2, 2022, Tandem closed at $51.34; however, on November 3, 2022 Tandem closed at $35.72 – a one-day decline of 30.4%.

## JURISDICTION AND VENUE

6.      Plaintiff brings this action individually and on behalf of other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

7.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

9.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Tandem is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

10.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

11.      Plaintiff purchased Tandem common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Tandem is attached hereto.

12.     Tandem Diabetes Care, Inc. is a Delaware corporation with its principal executive offices located at 12400 High Bluff Drive, San Diego, California 92121. During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "TNDM."

13.     Defendant John F. Sheridan ("Sheridan") was, at all relevant times, the President, Chief Executive Officer, and Director of Tandem.

14.     Defendant Leigh A. Vosseller ("Vosseller") was, at all relevant times, the Executive Vice President, Chief Financial Officer, and Treasurer, of Tandem.

15.     Defendants Sheridan and Vosseller are sometimes referred to herein as the "Individual Defendants." Tandem together with the Individual Defendants are referred to herein as the "Defendants."

16.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Tandem's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

17.     Tandem is liable for the acts of the Individual Defendants, and its employees under the doctrine of *respondeat superior* and common law principles

4

of agency as all the wrongful act complained of herein were carried out within the scope of their employment with authorization.

18.     The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Tandem under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

**A.     Company Background.**

19.     Tandem is a global medical technology company that develops, manufactures, and markets a variety of consumer technologies and software for at-home diabetes care.

20.     The Company's flagship product is the "t:slim X3," an at-home insulin pump approved by the FDA.  The Company also produces web-based applications which assist users in monitoring and treating diabetes.

**B.     The Defendants Materially Misled Investors Concerning Tandem's Revised 2022 Full Year Guidance.**

*August 3, 2022*

21.     Prior to markets opening on August 3, 2022, Tandem issued a press release announcing its second quarter results and revising its 2022 full year guidance.  In the press release, the Company updated its 2022 Annual Guidance stating:

> We demonstrated record sales in the second quarter, while navigating new and increasing economic headwinds.
>
> The fundamentals of our business remain strong, and we are confident that we can achieve our long-term growth and profitability objectives by continuing to provide new innovations and best-in-class care.
>
> For the year ending December 31, 2022, the Company is updating its financial guidance as follows: Sales are estimated to be in the range of $835 to $845 million, which represents an annual sales growth of 19 to

20 percent compare to 2021.  The Company's prior sales guidance for 2022 was estimated to be in the range of $850 to $865 million."

22.    On the same day, Defendants held an earnings call to discuss Tandem's quarterly earnings. During the call, Vosseller provided analysts and investors with insight into the Company's financial position and projections for the remainder of the financial year.   These statements misled investors concerning Defendants' ability to accurately project sales and revenue.

23.    During opening remarks, Vosseller stated:

> Since the beginning of the year, **we have factored pandemic and competitive-related pressure into our guidance based on what we have experienced historically.  We feel that the results today are largely in line with those expectations.**
>
> **The shift in the economic environment and its impact on consumer purchasing behaviors is a new dynamic that we began experiencing in the second quarter and even more so as we enter Q3.**  We think its prudent to be cautious about the U.S. environment for the remainder of the year.  Therefore, we have reduced our 2022 worldwide sales expectations by 2% to a range of $835 million to $845 million, representing growth year-over-year of 19% to 20%.

24.    During the question-and-answer segment of the call, Defendant Vosseller perpetuated the false impression given to investors that, despite the slight downturn in sales projections, that such projections had already factored in projected economic challenges and downturns:

> <Travis Lee Steed, Bank of America, Research Div., Managing Director>: So on the $15 million to $20 million guide reduction for this year.  You called out kind of 3 things – staffing, competition, and kind of the macro recession.  Just make sure I understand exactly.  It sounds like nothing changed except the recession piece versus expectations.  So is the entire reduction related to the recession piece? And how much of that did you see in Q2 versus what you expect in the second half?

6

<Vosseller>:  Yes.  Thanks for the question, Travis.  So you're correct. **The guidance reduction was solely around that third dynamic – that third new dynamic.**  We began to really see this at the very end of the second quarter and moving into the third quarter.  So its something that's obviously more difficult for us to predict, but we think we have good mitigations in place, and we'll continue to manage it throughout the rest of the year.

25.    The above statements in Paragraphs 21-24 were false and/or materially misleading because Defendants misled investors by creating the false impression that as between three factors – competition, pandemic-related complications, and inflation – inflation alone accounted for the Company's reduced sales projections. That was false.  Alternatively, Defendants deliberately ignored the impact of the other two factors – competition and the pandemic – on sales and revenue. In either event, Defendants misled investors by providing the public with a materially flawed impression of the Company's sales and revenue position for the remainder of 2022.

26.    The truth about Tandem's sales forecasts was material to investors. Revenue is one of the most important metrics relied upon by investors when evaluating a company. Had investors known that Tandem's projections were inaccurate and that Defendants were incapable of developing accurate projections, investors would have taken different actions with regard to their positions in Tandem stock. The truth about Tandem's projections and forecasting capabilities would have altered the total mix of information concerning Tandem stock available to investors.

*September 8, 2022*

27.    On September 8, 2022, Sheridan and Vosseller spoke at the Wells Fargo Health Care Conference to discuss Tandem's operations and financial earnings. In pertinent part, Vosseller answered questions from Wells Fargo

7

Research Analyst Lawrence H. Biegelsen concerning the revised guidance the Company issued in August:

> <Biegelsen>: And on the Q2 call, you highlighted 3 headwinds that resulted from lower-than-expected Q2 Sales.

> <Sheridan>: Right, right.

> <Biegelsen>: And lower revenue guidance for the year. So I'm not going to go into all 3. I'll give you a chance to address those. But how much were each of these a factor? And what's assumed in the new guidance for each?

> <Sheridan>: Okay. Well, let me start off by saying that on the Q3 call, we indicated that we had pressure in June and July that we didn't anticipate. And I think that now that we've exited August, we've seen a positive shift in the beginning of a momentum build that really confirms our assumptions for the second half of the year. So I wanted to say just that.

> I also want to say that we – looking at the new starts, its 50-50 MDI and competitive conversions, and we're seeing strong renewal update also. And so as we – just as you mentioned, I mean clearly we factored COVID in. We've seen it for the last several quarters. We factored the competitive challenges in there. These things pretty much occurred as we had anticipated they would. There was no real surprise.

> I would say the thing that did surprise us was the macro factors. And I think it's interesting, since we have said that, a number of analysts have come out and said, yes, in fact, they have interviewed endos and endos and said, yes, it is a meaningful problem that's affecting their patient population. And so it is real out there.

> I'll also just say that there's also been a question says, how do we know it's the macro factors versus the competition? And I'll just say that typically, the people who are affected by these macro issues are the people [who] have already decided to purchase a Tandem pump.

8

They're in our funnel.   They're talking to our internal sales organization.

And in the conversations that we've having with these people they're basically saiying that they're just – there's uncertainty and some doubt there's – they're pausing actually.  They're the ones that are pausing because of these additional cost of gas or the additional cost of groceries, and $60 a month of whatever it is as a payment plan is still meaningful for them.

And so there's definite knowledge that this is going on.  It's not that they competitive environment has taken over.

28.     Similarly, Vosseller fielded a question from Biegelsen about the guidance reduction:

<Biegelsen>: I guess a question on the guidance.  I don't know the last time you missed consensus or lowered your guidance.  It's been a long time.  I guess my point is, you guys have done a really good job beating numbers.  How did you think about the guidance when you – the updated guidance you gave?  And what was implied for kind of Q3, Q4, some of the other metrics?

<Vosseller>: … And so some of the opportunities you think about are how many MDI people will come to market and buy a pump this year?  How many converters will you have?  How strong will renewals be?  And you make estimates on that.  Some of the risk would be things like what's happening in the COVID environment, what kind of competitive noise we might see?  But what we were surprised by that we did not anticipate at the beginning of the year was this macroeconomic environment that we have started to experience really in June and heavily in July.

So those were the elements that everything else was on track with our expectations.  Those were the – that would be the element that drove us to have to adjust the guidance in the second quarter.  And so we're very confident now in achieving what we have for the back half of the year and the assumptions are this, in that the COVID dynamics will continue to persist roughly at the same levels that we're seeing.  We've been

9

managing through those very well now for at least 4 quarters with this type of pressure we see in the physician offices.

From the competitive noise perspective, we anticipated the pressure would be greatest up until there was a full launch of the product. And once there was a full launch, when people are able to actually see and experience the product and what's available, that's when the pressure starts to subside. So we estimate that over the new few quarters that we'll start to see that dissipate. There will still be pressure through the end of the year, but it will start to wane as we get close to the end of the year.

From the economic environment piece, this was something that we've not ever had to factor in before. And so we were thoughtful about the metrics we saw for June and July and where we thought this might trend.

29.     Analysts reported on their comments. For example, in a September 8, 2022 Company Update, Biegelsen of Wells Fargo summarized Sheridan and Vosseller's remarks as, "[a]fter previously calling out several macro pressures in June and July, TNDM has seen improvements in August." Further, Biegselsen surmised of Sheridan and Vosseller's remarks, "[competitor] Omnipod 5 is not having the same market impact the MDT's 670G had years ago, and believe that early reviews are mixed. Importantly TNDM is not seeing any transition of TNDM patients to PODD. Overall, TNDM expects competitive pressure from Omnipod 5 to wane towards the end of 2022."

30.     In a September 9, 2022 note, Brooks O'Neil of Lake Street Capital Markets wrote that Sheridan and Vosseller "suggested the Company has seen the seasonal uptick in the business that usually comes as U.S. buyers exhaust their insurance deductibles towards the end of summer. While competitor, Insulet's Omnipod 5, is now available nationwide, Tandem has seen the response they expected, not more. In addition, management clearly stated they are not seeing customer migration from Control-IQ to Omnipod now."

10

31.    Investors responded positively to these reports.  TNDM opened on September 9, 2022 at $52.86 per share; it closed at $55.98 per share, an increase of 5.9% per share.

32.    The above statements in Paragraphs 27-28 were false and/or materially misleading because Defendants misled investors by creating the false impression that the impact of competitors' products, such as Omnipod 5, was minimal or less than expected.   This was false. Defendants' forecasting processes failed to adequately account for the potential impact of the release of Omnipod 5 and the impact of that product on the Company's revenue. Alternatively, Defendants deliberately misled investors regarding the impact of Omnipod 5 on revenue. Further, Defendants misled investors by creating the false impression that the factors which led to the decreased sales guidance in August – competition, COVID, and inflation – had not been adequately controlled for and were, in fact, improving. Alternatively, Defendants deliberately misled investors when stating that the second half of 2022 had been adequately predicted.  In either event, Defendants misled investors by providing the public with materially flawed impression of the Company's sales and revenue position for the remainder of 2022.

33.    The truth about Tandem's sales forecasts was material to investors. Revenue is one of the most important metrics relied upon by investors when evaluating a company. Had investors known that Tandem's projections were inaccurate and that Defendants were incapable of developing accurate projections, investors would have taken different actions with regard to their positions in Tandem stock. The truth about Tandem's projections and forecasting capabilities would have altered the total mix of information concerning Tandem stock available to investors.

**C.**      <u>**The Truth Emerges Concerning Tandem's 2022 Revenue.**</u>

<u>*November 2, 2022*</u>

34.     On November 2, 2022, Tandem issued a press release updating its 2022 Annual Guidance, stating:

> In this highly variable environment, we are factoring greater caution into our guidance to re-baseline expectations for the new few quarters. … The timing of our potential new product introductions next year adds increased complexity to the current market dynamics, so we feel it's prudent for our guidance to reflect more moderate growth in periods between new product launches.
>
> …
>
> Non-GAAP sales are estimated to be in the range of $800 million to $805 million … The Company's prior sales guidance for 2022 was estimated to be in the range of $835 million to $845 million.

35.     Tandem also held a conference call on November 2, 2022 to discuss its earnings. In pertinent part, Sheridan said to analysts and investors:

> [W]e do not expect our growth to be linear. We anticipate there will be periods of more moderate growth between more exceptional periods driven by our introduced production of new technologies. Where we stand today is more of the former, in part due to the timing of our own product cycles, in addition to the recent macro environment and industry-related headwinds.
>
> Similar to what we discussed in our last earnings call, we've largely been pressured by 3 dynamics that continue throughout Q3. First were the pandemic-related pressures that have fluctuated throughout the past 2 years. These include an array of things from COVID case rates to endocrinology office staffing shortages. Second was the competitive environment in the United States. And third were the economic conditions, including inflation and the threat of recession.
>
> To provide an update on each of these dynamics, the broader COVID-related pressures began escalating in Q3 of last year in all our markets. It's now a consistent factor when looking at the year-over-year

12

comparison in an environment that we anticipate operating in for the foreseeable future. The second dynamic is the competitive environment in the U.S. This intensified across the year, in line with the competitors scaling launch of a new AID algorithm, which is on a device form factor that we've competed with historically.

In surveying our sales management, the majority said the disruption associated with his launch is less than what we've experienced a few years ago when another competitive AID system launched. That being said, it creates noise in the market that we'll be navigating and managing for the few quarters.

36.     During the question-and-answer segment of the earnings call, Sheridan engaged in this exchange:

<Brooks Gregory O'Neil, Lake Street Capital Markets, Sr. Research Analyst>: I'm curious if your current outlook contemplates a greater or more or less the same impact from Omnipod 5 [a competitor product] in 4Q and into early 2023.

<Sheridan>: Brooks, it's difficult for us to actually isolate which of the 3 – the factors that we described, the 3 market dynamics are getting worse or getting better. I mean I would say that, as I mentioned, we believe we have the best product on the market right now. But there is – the competitive environment right now is that – well, I would say that the impact that we're seeing from the current competitor is what we expected.

37.     Analysts expressed "surprise" about the Company's November 2, 2022 disclosures, especially in light of management's comments at the September Health Care Conference. On November 3, 2022 Citi Research issued a report stating, "management lowering FY22E revenue to $800-$805M from $835-$845M surprised us (and others), despite commentary at the September meetings. Staffing, competitive pressures, and economic conditions allowed for August seasonality that did not translate to a September acceleration, nor normalized levels in October." Further, "[i]n aggregate, it highlighted these pressures have had a steady impact on

the business since the end of 2Q22, and management expects the pressure to remain constant through YE22E."

38.    Tandem shares lost considerable value between opening on November 2, 2022 and close on November 3, 2022, diminishing 33.8% from $55.60/share to $36.77/share on unusually high trading volume.

**D.    Loss Causation and Economic Loss**

39.    During the Class Period, as detailed herein, Tandem and the Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Tandem's common stock and operated as a fraud or deceit on Class Period purchasers of Tandem's common stock by materially misleading the investing public. Later, when Tandem and Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Tandem's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of Tandem's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

40.    Tandem's stock price fell in response to the corrective event on November 2, 2022 as alleged *supra* On November 2, 2022, Defendants disclosed information that was directly related to their prior misrepresentations and material omissions concerning Tandem's forecasting processes and 2022 full-year financial guidance.

41.    In particular, on November 2, 2022, Tandem reduced its estimated 2022 annual sales to $800 million to $805 million from the Compay's previous estimate of $835 million to $845 million.  The reasons cited for this reduction were inflation, COVID, and competition, despite previous assurances that competition and COVID had been adequately modeled in the Company's financial guidance,

and previous guidance that the Company was experiencing growth in the second half of 2022.

**E.    Presumption of Reliance; Fraud-On-The-Market**

42.    At all relevant times, the market for Tandem's common stock was an efficient market for the following reasons, among others:

(a)    Tandem's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

(b)    Tandem communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)    Tandem was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)    Unexpected material news about Tandem was reflected in and incorporated into the Company's stock price during the Class Period.

43.    As a result of the foregoing, the market for Tandem's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Tandem's stock price. Under these circumstances, all purchasers of Tandem's common stock during the Class Period suffered similar injury through their purchase of Tandem's common stock at artificially inflated prices, and a presumption of reliance applies.

44.    Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not

15

a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**F.   No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine**

45.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with revenue projections while at the same time failing to maintain adequate forecasting processes. Defendants provided the public with forecasts that failed to account for this decline in sales and/or adequately disclose the fact that the Company at the current time did not have adequate forecasting processes.

46.   To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

47.   Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Tandem who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such

16

assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tandem's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

49.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tandem's common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tandem or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of November 2, 2022, the date of the Company's last quarterly or annual report within the Class Period, there were 64,298,785 shares of the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

50. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

51. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

52. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tandem;

(c) whether the Individual Defendants caused Tandem to issue false and misleading financial statements during the Class Period;

(d) whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e) whether the prices of Tandem's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

53. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members

18

may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Against All Defendants

### for Violations of Section 10(b) and Rule 10b-5 Promulgated Thereunder

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Tandem common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Tandem's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

57.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or

issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Tandem's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

58.    By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

59.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of Tandem's internal affairs.

60.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Tandem's businesses, operations, future financial condition and future prospects. As a result of the

dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Tandem's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Tandem's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

61.     During the Class Period, Tandem's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Tandem's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Tandem's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Tandem's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

62.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with

21

their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Against The Individual Defendants and Tandem
### For Violations of Section 20(a) of the Exchange Act

64.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.   During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Tandem's misstatements.

66.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Tandem which had become materially false or misleading.

67.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tandem disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tandem to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tandem's common stock.

22

68.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Tandem to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

69.     By reason of the above conduct, the Individual Defendants and/or Tandem are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

//

//

23

Dated:  September 8, 2023                Respectfully Submitted,

**LEVI & KORSINSKY, LLP**


 */s/ Adam M. Apton*
Adam M. Apton
Email: aapton@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290

*Attorneys for Plaintiff*

24