COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
LINH K. NGUYEN (305737)
(lknguyen@cooley.com)
DYLAN K. SCOTT (332796)
(dscott@cooley.com)
10265 Science Center Drive
San Diego, CA 92121
Tel: (858) 550-6000

*Attorneys for Defendants Tandem Diabetes
Care, Inc., John F. Sheridan, and Leigh A.
Vosseller*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREY LOWE, Individually and on Behalf of All Other Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TANDEM DIABETES CARE, INC., JOHN F. SHERIDAN, and LEIGH A. VOSSELLER,<br><br>Defendants. | Case No. 3:23-cv-1657-H-BLM<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date: April 29, 2024<br>Time: 10:30 a.m.<br>Judge: Hon. Marilyn L. Huff<br>Courtroom: 12A |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ........................................................................................... 2

    A. PLAINTIFFS DO NOT PLEAD FALSITY ........................................ 2

        1. The Opposition Concedes the FEs Are Not Qualified to Speak About Company-Wide Competitive Challenges or Sales Forecasts. ....................................................................... 2

        2. The FE Allegations Do Not Render the Challenged Statements False or Misleading When Made. ........................... 3

    B. PLAINTIFFS DO NOT PLEAD SCIENTER .................................... 6

        1. Plaintiffs Cannot Rely on the FE Allegations and "Core Operations" to Plead Scienter. ...................................... 7

        2. The Temporal Proximity Between Tandem's Confirmation and Subsequent Revision of Guidance Does Not Support Scienter ....................................................... 9

    C. PLAINTIFFS DO NOT PLEAD LOSS CAUSATION ..................... 10

III. CONCLUSION ...................................................................................... 10

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM**

## I.   INTRODUCTION

Plaintiffs' Opposition confirms what has been clear from the beginning: The AC's theory of fraud is utterly unsupported.

Plaintiffs continue to insist that, in August and early September 2022, Defendants knowingly concealed that growing competition made Tandem's guidance unattainable. But Plaintiffs base that entire theory on two low-level, former employees ("FEs")—neither of whom offers any real support for it. The FEs never say how much competition Defendants expected, much less that Defendants' expectations were inconsistent with Tandem's guidance. And the FEs' silence on the subject should come as no surprise, as they were ***never*** involved in a Tandem forecast, ***never*** interacted with an Individual Defendant, and were ***never*** privy to information about competition in 109 of Tandem's 110 U.S. sales territories. This alone is fatal to Plaintiffs' claims.

Meanwhile, Plaintiffs do not dispute Tandem's public explanation for why it lowered guidance: The usual year-end sales boost never materialized. Plaintiffs do not dispute that Tandem typically sees year-end sales boosts, that Defendants reasonably expected to see such a boost in 2022, or that Defendants correctly interpreted late September and October sales figures to signal that no boost was coming.

Plaintiffs' claims, in short, fail from every angle. They allege no particularized facts undermining the challenged statements. They offer no indicia of scienter—*e.g.*, no internal documents, no conversations with Defendants, no public admissions, no stock sales, and no remotely plausible motive. And they cannot identify any corrective disclosure, only a bald mischaracterization of Tandem's November 2 earnings call. All Plaintiffs have is temporal proximity between September optimism and November reduced guidance—proving that the AC is nothing more than an attempt to plead fraud by hindsight. That approach fails as a matter of law, so the case should be dismissed.

Cooley LLP
Attorneys at Law
San Diego

1

Reply ISO Defendants'
Motion to Dismiss
Case No. 3:23-cv-1657-H-BLM

## II.    ARGUMENT

### A.    PLAINTIFFS DO NOT PLEAD FALSITY

#### 1.    The Opposition Concedes the FEs Are Not Qualified to Speak About Company-Wide Competitive Challenges or Sales Forecasts.

Defendants' Motion laid out why the FEs are unreliable, and nothing in Plaintiffs' Opposition demonstrates otherwise. (*See* Opp. 2, 4-5, 9-11; Mot. 16-18.)[1]

The FEs simply do not have the personal knowledge Plaintiffs wish they had. As Plaintiffs concede, the FEs can "speak only to their direct observations" about "the adverse market conditions they faced"—none of which were Company-wide. (Opp. 4-5, 10-11.) These are low-level salespeople without personal knowledge of (i) any **Company-wide** effects of competition, or (ii) any **assumptions underlying Tandem's top-level financial guidance**.[2] (Mot. 16-17.) That is why the FEs do not even pretend to know how much competition Tandem faced at any time, let alone how that competition impacted Tandem or its forecasts at any time. *See McGovney v. Aerohive Networks*, 2019 WL 8137143, at *12 (N.D. Cal. Aug. 7, 2019) (FE allegations that did "not quantify the severity of the[] problems" made "it difficult to assess the falsity of Defendants' statements"); *City of Royal Oak Ret. Sys. v. Juniper*

---

[1] All "¶" references are to the Amended Complaint for Violation of the Federal Securities Laws (ECF 16, the "AC"), all "Mot." references are to Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss (ECF 21-1, the "Motion"), all "Opp." references are to Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF 22, the "Opposition"), and all "Ex." references are to the exhibits attached to the Scott Declaration filed with the Motion. Unless otherwise noted, all emphasis is added and all internal quotation marks, ellipses, brackets, and citations are omitted.

[2] Not to mention, Plaintiffs concede that they never allege (i) FE2's employment dates, or (ii) when, specifically, either FE observed unexpected increasing competition pressure. (Mot. 18); *see Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 890 (N.D. Cal. 2008) (stating that plaintiffs, "[a]t the very least," "must describe the [FE's] period of employment"). Plaintiffs try to fix the former failing by "alleging" FE2's employment dates in their Opposition (Opp. 10 n.3), but they cannot amend their pleading through an opposition brief. *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). At any rate, the FEs' vague statements about conditions in "Q3," which includes multiple weeks after Defendants made the last challenged statement, are not "specific contemporaneous statements" sufficient to show reliability (or falsity, for that matter). *See Metzler Inv. GMBH v. Corinthian Colleges*, 540 F.3d 1049, 1070 (9th Cir. 2008).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM

*Networks*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) (plaintiffs must allege "facts" providing "analytical link between" FE allegations and conclusion that company could not meet revenue goals); Mot. 17-18.

Whether FE speculation "corroborat[es]" analyst speculation is irrelevant. (Opp. 10-11.) An analyst's "conclusory and speculative" opinion has never been enough to plead falsity under the PSLRA either. *E.g.*, *City of Sunrise Firefighters' Pension Fund v. Oracle*, 2019 WL 6877195, at *15 (N.D. Cal. Dec. 17, 2019) (dismissing complaint); Mot. 18-20. And none of Plaintiffs' cited authorities holds otherwise; each involved corroboration by insider executives who *did* have the requisite personal knowledge.[3]

### 2.    The FE Allegations Do Not Render the Challenged Statements False or Misleading When Made.

Even assuming the FE allegations are reliable (they are not), they do not show that the challenged statements were materially false or misleading when made, particularly when those statements are read fairly and in context. (Opp. 11-18.)

**Statements about macroeconomic headwinds and about competition being "in line with expectations" were not misleading.** Plaintiffs challenge (i) the "in line with expectations" statements about competition, and (ii) the August 3, 2022, earnings call statements attributing Tandem's lowered guidance to macroeconomic pressure. (Opp. 11-14.) According to Plaintiffs, those statements were actionably misleading because both FEs somehow confirmed that "competition was negatively impacting sales" in Q2 and Q3 "more than management had stated," which supposedly "rend[ered] the sales guidance unattainable." (Opp. 12.) But to raise that inference, Plaintiffs must allege "facts showing that [Tandem]'s revenue projections were unattainable," and nothing in the AC comes close. *See Costabile v. Natus Med.*, 2018 WL 7134363, at *3 (N.D. Cal. Dec. 18, 2018) (dismissing complaint); *Juniper*,

---

[3] (Opp. 11 (citing *Glazer Capital Mgmt. v. Forescout Techs.*, 63 F.4th 747, 772-73 (9th Cir. 2023) (corroboration by CEO); *In re Biomarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *11 (N.D. Cal. Jan. 6, 2022) (corroboration by executive)).)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM

880 F. Supp. 2d at 1064 (dismissing complaint because plaintiffs failed "to allege specific facts that show how these problems and difficulties necessarily precluded [defendant] from reaching its projected growth targets"). The FEs say nothing specific about the extent to which competition was negatively impacting sales nor do they specify who from "management" was alerted to it.[4] (¶¶ 35-40.) And regardless, the AC contains no particularized facts suggesting that Defendants did not reasonably believe their opinions.[5] (Mot. 11-12, 20-24; *infra* at Section II.B.)

**Statements about the August "positive shift" that confirm the assumptions in Tandem's guidance.** Plaintiffs insist that Defendants' mid-September statements about a "positive shift" in sales were misleading because competition allegedly intensified in Q3. (Opp. 14-15.) But as Defendants' Motion explained, those statements had nothing to do with competition; they reflect Defendants' view that the ***seasonal, insurance-driven*** year-end sales boost was beginning. (Mot. 14-15.) Defendants disclosed this to investors and, at the same time, explained that Tandem was still feeling competitive pressure. (*Id.*) Plaintiffs do not argue otherwise.[6]

---

[4] Notably, only FE2, who allegedly worked in Canada (a territory largely irrelevant to the analysis), claimed that inflation and the t:slim X2's higher upfront cost caused Tandem to lose sales to competitors. (¶ 39.)

[5] Plaintiffs argue that statements about competition being "in line with expectations" are statements of fact, not opinions. (Opp. 12-13 (citing *Union Asset Mgmt. Holding AG v. SanDisk*, 2016 WL 406283, at *3-*4 (N.D. Cal. Jan. 22, 2016).) But *SanDisk* evaluated whether such statements were forward-looking. 2016 WL 406283, at *3-*4. Here, Defendants argued that the statements were subjective interpretations of data, *i.e.*, opinions, and the Opposition does not identify any facts showing they were false or misleading, *i.e.*, that they were unreasonably or insincerely held. (Mot. 11-12, 20-24; ECF 21-3; *infra* at Section II.B.) Additionally, when Ms. Vosseller's August 3 statements are read in context, it's clear she was giving her opinion as to why she did not believe inflation was causing customers to switch to competitors. (¶ 59; Ex. 7 at 13-14.), The Opposition also does not identify any facts showing these opinions to be false or misleading.

[6] Plaintiffs insist that "positive shift" is not puffery. (Opp. 15 (citing *Barry v. Colony NorthStar*, 2019 WL 13237710, at *14 n.8 (C.D. Cal. Jan. 24, 2019).) But *Barry* held that statements about remaining "on track" to meet guidance were not puffery. Here, Plaintiffs do not challenge any "on track" statements. Further, the *Barry* court unquestionably found that statements like those Plaintiffs do challenge—about "positive momentum" and "headwinds"—were puffery. 2019 WL 13237710, at *14.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM

**Tandem's financial guidance was not misleading.**[7] Plaintiffs argue that even if Tandem's sales guidance and the challenged statements about it are forward-looking, they are not protected by the safe harbor because Tandem's cautionary language was not meaningful. (Opp. 16-17.) Plaintiffs also insist that the guidance must have been false because Defendants said that competition was as expected, but then reduced guidance. (Opp. 18.) Plaintiffs are wrong on both scores.[8]

Defendants repeatedly warned investors that Tandem's guidance was uncertain, and that specific *existing* competitive products could cause the Company to miss it. (Mot. 10, 14.)[9] Plaintiffs refer to two lone statements from Tandem's SEC filings. (Opp. 17) But they ignore Tandem's many specific disclosures about existing competition, which renders Plaintiffs' cited cases inapposite because the cautionary language in them was boilerplate or warned of a possible risk that had already materialized. *See In re Illumina Sec. Litig.*, 2018 WL 500990, at *4 (S.D. Cal. Jan. 22, 2018) (disclosure that "did not even identify a specific factor whose occurrence or non-occurrence was unknown" was boilerplate); *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 104 (D.C. Cir. 2015) (rejecting disclosure that "did not warn of actual obsolescence that had already manifested itself"). The *Illumina* court found lacking cautionary language that merely disclosed "[w]hen we introduce or announce new or enhanced products, we face numerous risks relating to product transitions, including the inability to accurately forecast demand[.]" *Illumina*, 2018 WL 500990, at *4, and the *Harman* court rejected similarly generic warnings about risks that had

---

Plaintiffs also argue the statements are not puffery because analysts highlighted them in reports. (Opp. 15-16.) But that is not the standard for assessing puffery. *See Glazer*, 63 F.4th at 770-71 (rejecting puffery argument not because analysts relied on the statements but because the statements were "concrete").

[7] Plaintiffs claim Defendants represented that pressure from the Three Headwinds would be "temporary," but unsurprisingly, do not identify any specific statements. (Opp. 16.)

[8] Plaintiffs argue Defendants knew the statements were false, so the safe harbor can't apply. (Opp. 18.) But Plaintiffs have not pled actual knowledge. (*Infra* Section III.)

[9] Plaintiffs also misrepresent Tandem's cautionary language by saying it did not address specific competitors; it specifically described competitive pressure from Insulet's launch of the Omnipod 5. (Mot. 5-6; Opp. 17.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM

already manifested, *Harman*, 791 F.3d at 104. In contrast, Tandem's cautionary language expressly disclosed, in present-tense, the very issue Plaintiffs claim was concealed—*i.e.,* that "the decision-making process of [Tandem's] current and potential customers, *has been and will continue to be impacted by . . . the introduction of new products . . . including the timing of the commercialization of new products by us and our competitors*." (Ex. 6 at 28.) Moreover, contrary to what Plaintiffs claim, Tandem specifically identified the companies and products that posed a competitive threat. (Mot. at 5-6, 14 (citing Ex. 1 at 32; Ex. 3 at 29, 31, 44-47); Ex. 6 at 48-49 (disclosing existing competitors "Insulet and Medtronic" and identifying specific products, including "Insulet['s] . . . insulin pump with a tubeless delivery system" with which Tandem's products compete).)

Next, Plaintiffs declare that Tandem's August guidance must have been false because if Tandem had experienced the expected level of competition in Q3 that was accounted for in the guidance—as Defendants stated—then Tandem would not have reduced guidance in November. (Opp. 18.) This argument falls apart in the face of Defendants' disclosure that the August guidance assumed a *seasonal* insurance-driven boost in demand at the end of the year, which unexpectedly failed to materialize. (Mot. 5, 7.) That surprise is what led Tandem to lower its guidance, even as competition persisted as expected. (Mot. 7.) In any event, even if Plaintiffs were correct that competition alone was the true driver of Tandem's late-September downturn, they still fail to plead that Defendants knew that their predictions made in August and early September would not pan out. (*Infra* Section III.)

### B.   PLAINTIFFS DO NOT PLEAD SCIENTER

To plead scienter, the AC must allege "*specific contemporaneous statements or conditions* that demonstrate the *intentional or deliberately reckless* false or misleading nature of the statements *when made*." *Ronconi v. Larkin* 253 F.3d 423, 432 (9th Cir. 2001). "Mere negligence—even head-scratching mistakes—does not amount to fraud." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1103 (9th

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM

Cir. 2021). "[K]nowledge of a fact is [also] insufficient to establish scienter without allegations that defendants 'believed that they made false or misleading statements.'" *Carey Camp v. Qualcomm*, 2020 WL 1157192, at *6 (S.D. Cal. Mar. 10, 2020). Scienter must be pled "with respect to each [] omission alleged," 15 U.S.C. § 78u-4(b)(2)(A), and with respect to **each defendant**, *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1214 (D. Ariz. 2009). Plaintiffs do not come close to clearing this high bar.

The AC contains none of the usual hallmarks of scienter—contemporaneous documents, meetings or discussions with the Defendants, admissions, or a motive to deceive. Indeed, Plaintiffs' failure to plead motive "makes it much less likely that [they] can show a strong inference of scienter." *Prodanova*, 993 F.3d at 1108. Rather than dispute this, Plaintiffs contend that they cleared the high bar to pleading scienter because of: (i) the FE allegations and the core operations inference; and (ii) temporal proximity between Tandem's confirmation and revision of guidance.[10] (Opp. 20-23.) Plaintiffs are wrong.

### 1.    Plaintiffs Cannot Rely on the FE Allegations and "Core Operations" to Plead Scienter.

The Opposition concedes the FEs had zero interactions with the Individual Defendants and they do not identify any specific information Defendants had contradicting their statements (let alone when they had it). (Mot. 23-24.) Instead, Plaintiffs argue that, despite these flaws, the FEs support scienter because selling insulin pumps is Tandem's "core business," and Defendants admitted to monitoring sales during Q3. (Opp. 19-21.) Plaintiffs' argument does not withstand scrutiny.

To start, FE allegations support scienter **only** if "the reporting witness has reliable personal knowledge of the defendants' mental state," *Sgarlata v. PayPal*

---

[10] Plaintiffs insist that scienter can be inferred by comparing Tandem's stock price to its competitors by baldly claiming that "macroeconomic factors generally impact members of an industry similarly." (Opp. 21-22.) This ignores common sense. Macroeconomic factors like inflation impact companies differently depending on their circumstances.

Cooley LLP
Attorneys at Law
San Diego

7

Reply ISO Defendants'
Motion to Dismiss
Case No. 3:23-cv-1657-H-BLM

*Holdings*, 409 F. Supp. 3d 846, 858 n.6 (N.D. Cal. 2019)—which the FEs are missing here. The Opposition tries to sidestep this problem by invoking the core operations doctrine. But that cannot solve the problem because it does not create any inference of scienter absent factual allegations describing the specific information revealed to defendants. *Charter Twp. of Clinton Police & Fire Ret. Sys. v. LPL Fin. Holdings*, 2019 WL 13178511, at *5 (S.D. Cal. Mar. 29, 2019) (rejecting core operations because plaintiffs failed to "identify specific documents the defendants relied upon as well as the contents of those documents."). Plaintiffs plead no such facts here. And, they do not identify facts demonstrating this is one of the "***exceedingly rare***" cases "in which the core operations inference, without more, is sufficient under the PSLRA." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008).

As for Plaintiffs' other argument—that Defendants monitored sales and therefore knew, based on the FE allegations, that competition was intensifying more than expected—it too fails. (Opp. 20-21.) First, it assumes the FE allegations are reliable and probative of falsity, and they are not. (*Supra* Section II.A.) Second, even if Defendants monitored sales, there are no facts in the AC indicating the specific information they supposedly learned (or when they learned it) that rendered Tandem's guidance unattainable and contradicted their public statements. In the absence of such facts, Plaintiffs' allegations cannot raise an inference of scienter. *E.g.*, *Inter-Loc. Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011) (rejecting "several vague and general averments that [defendants] had access to . . . real-time customer and sales information" because plaintiffs did not allege "any facts indicating that the content of the reports or data . . . was inconsistent with their statements").

Because the AC "does not supply hard numbers, admissions from management[,] . . . or corroborating statements by witnesses with personal knowledge of the company's financial state and management's fraud," Plaintiffs have not adequately pled scienter. *LPL Fin. Holdings*, 2019 WL 13178511, at *5

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

8

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM

(dismissing complaint).[11]

### 2. The Temporal Proximity Between Tandem's Confirmation and Subsequent Revision of Guidance Does Not Support Scienter.

The Opposition argues the Court may infer scienter based on the temporal proximity between Tandem's confirmation of the August guidance and downward revision of the guidance. There is simply no legal or factual support for Plaintiffs' position. They cite several cases (*Fecht v. Price Company*, *In re Grand Casinos, Securities Litig*ation, *Florida State Board of Administration v. Green Tree Financial*, and *Brasher v. Broadwind Energy*) for the unremarkable proposition that the proximity in time between the challenged optimistic statement and revelation of truth can be circumstantial evidence of scienter. (Opp. 22-23.) What Plaintiffs overlook though, is that, in each case, the court held that scienter was adequately pled by combining the alleged proximity in time with ***additional particularized allegations supporting fraudulent intent***.[12] There are no such particularized allegations here.

[11] Plaintiffs cited cases are distinguishable. (Opp. 19-20.) In *Daou* and *South Ferry*, plaintiffs identified specific facts contradicting defendants' statements and defendants were imputed with knowledge of them because they specifically represented they would know such facts. *See In re Daou Sys.,* 411 F.3d 1006, 1022-23 (9th Cir. 2005) (defendants admitted they were involved in "every detail" of company); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1257-1259 (W.D. Wash. 2009) (defendant had "intimate knowledge" of investment risk); *City of Livonia Emp's. Ret. Sys. v. Wyeth*, 2010 WL 3910265, at *2, *6 (S.D.N.Y. Sept. 29, 2010). Here, Mr. Sheridan stated that Tandem's inside sales organization was in active communication with Tandem's sales force. (Opp. 19-20.) That says nothing about his knowledge of Tandem's sales in real time, let alone how they compared to Tandem's public forecast. Plaintiffs' remaining cited cases are distinguishable for other reasons. *See Shenwick v. Twitter*, 282 F. Supp. 3d 1115, 1129-32 (N.D. Cal. 2017) (plaintiffs pled scienter based on defendant admissions and executive resignations); *Noto v. 22nd Century Grp.*, 650 F. Supp. 3d 33, 45-57 (W.D.N.Y. 2023) (defendants had plausible motive to deceive and plaintiffs alleged specific facts showing defendants knew statements were false).

[12] In *Brasher* and *Green Tree*, both out-of-circuit opinions, plaintiffs pled scienter based on temporal proximity and the "sheer size" of the alleged financial fraud. *Brasher*, 2012 WL 1357699, at *1, *23 (N.D. Ill. Apr. 19, 2012) (involving $82.2 million impairment charge, *i.e.*, 63% of the company's intangible assets); *Green Tree*, 270 F.3d 645, 660, 650, 666 (8th Cir. 2001) (involving $390 million write down in reserves and earnings). By contrast, Tandem reduced its sales guidance for 2022 by a mere 4-5%. (¶ 50.) And in *Fecht*, which pre-dates the PSLRA, *Green Tree*, and *Grand Casinos*, the plaintiffs coupled their temporal proximity allegations with

**REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM**

Indeed, the AC contains no specific facts at all, much less facts going to the state of mind of the Individual Defendants. This is fatal. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, 856 F.3d 605, 622-23 (9th Cir. 2017) (timing and magnitude of goodwill write down were insufficient to plead scienter).

## C.   PLAINTIFFS DO NOT PLEAD LOSS CAUSATION

Plaintiffs concede, as they must, that a corrective disclosure must reveal new facts that render Defendants' prior statements false or misleading. (Opp. 24-25.) But rather than identify any such facts, Plaintiffs resort to misrepresenting Defendants' statements. In the November 2 earnings call, Defendants did not "admit[]" that competition drove the reduction in guidance. (Opp. 25.) They merely confirmed what they said all along: "the impact that we're seeing [from competition] . . . is what we expected." (Mot. 19; Mot. 5-6, 10.) Additionally, Mr. Sheridan's statement that competition "intensified across the year" is far from some sort of admission. (Opp. 18.) His very next sentence makes clear that increasing competition was expected. (¶ 51 (Mr. Sheridan: "[T]he competitive environment . . . intensified across the year, in line with the competitors scaling launch of a new AID algorithm . . . That we've competed with historically.) Mr. Sheridan goes on to say that the disruption was "less than what [Tandem] experienced" previously with a similar launch. (*Id*.) Accordingly, there was no "admission" during the November 2 call, nor any other "new" information revealed that could have rendered the challenged statements false or misleading when made, which means Plaintiffs failed to plead loss causation.[13]

## III.   CONCLUSION

For the foregoing reasons, the AC should be dismissed with prejudice.

---

plausible motive allegations. *See Fecht v. Price*, 70 F.3d 1078, 1082-84 (9th Cir. 1995) (alleging suspicious stock sales); *Grand Casinos*, 988 F. Supp. 1273, 1283 (D. Minn. 1997) (same); *Green Tree*, 270 F.3d at 661 (alleging suspicious compensation).

[13] The Motion explained that an analyst's speculation cannot support loss causation. (Mot. 25 n.14.) Plaintiffs argue otherwise, citing *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). (Opp. 24-25.) But they fail to mention that the *BofI* court held that the analyst articles at issue did not constitute corrective disclosures. 977 F.3d at 797.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM

Dated: March 10, 2024

COOLEY LLP

By: */s/ Peter Adams*
PETER M. ADAMS (243926)

*Attorneys for Defendants Tandem Diabetes Care, Inc., John F. Sheridan, and Leigh A. Vosseller*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:23-CV-1657-H-BLM