1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREY LOWE, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>TANDEM DIABETES CARE INC., JOHN F. SHERIDAN, AND LEIGH A. VOSSELLER,<br><br>          Defendants. | Case No.: 3:23-cv-01657-H-BLM<br><br>**ORDER:**<br><br>**GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Doc. No. 21.] |

On February 1, 2024, Co-Lead Plaintiffs Mason Raines, Thomas O. Martel, and Linna Rae Martel ("Plaintiffs"), filed an amended complaint ("AC") alleging that Defendants Tandem Diabetes Care Inc., John F. Sheridan, and Leigh A. Vosseller (collectively, "Defendants") violated federal securities laws. (Doc. No. 16, AC.) On March 11, 2024, Defendants filed a motion to dismiss Plaintiffs' AC for failure to state a claim. (Doc. No. 21.) On March 27, 2024, Plaintiffs filed a response in opposition to Defendants' motion to dismiss. (Doc. No. 22.) On April 10, 2024, Defendants filed their reply. (Doc. No. 23.) The Court, pursuant to its discretion under Local Rule 7.1(d)(1), submitted the motion on the parties' papers. (Doc. No. 24.) On April 24, 2024, Plaintiffs

filed a notice of supplemental authority in support of their opposition to Defendants'
motion to dismiss.  (Doc. No. 25.)  On April 25, 2024, Defendants filed a notice of
supplemental authority in support of their motion to dismiss.  (Doc. No. 26.)  For the
reasons below, the Court grants Defendants' motion to dismiss with leave to amend.

## BACKGROUND

The following factual background is taken from the allegations in Plaintiffs' AC.
This is a securities class action against Tandem Diabetes Care, Inc. ("Tandem" or the
"Company") and two of its officers – John F. Sheridan and Leigh A. Vosseller (together,
the "Individual Defendants") – under Sections 10(b) and 20(a) of the Securities Exchange
Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.  (AC ¶¶ 97–
112.)  Defendant John F. Sheridan ("Sheridan") was Tandem's President, Chief Executive
Officer, and Director of Tandem.  (Id. ¶ 17.)  Defendant Leigh A. Vosseller ("Vosseller")
served as Tandem's Executive Vice President, Chief Financial Officer, and Treasurer.  (Id.
¶ 18.)  Plaintiffs bring this action on behalf of all persons and entities who purchased
Tandem common stock between August 3, 2022 and November 2, 2022, inclusive (the
"Class Period").  (Id. ¶ 1.)

Tandem is a medical device company based in San Diego, California, that focuses
on diabetes management.  (Id. ¶¶ 16, 23.)  Tandem primarily manufactures and sells insulin
pumps for diabetic patients.  (Id. ¶ 2.)  Approximately 75% of its sales occur in the United
States.  (Id. ¶ 24.)  Tandem originates its sales from first-time customers and renewals (i.e.,
customers renewing the pumps they already own).  (Id.)  For Tandem's U.S. customers,
health insurance plans will reimburse customers for Tandem pumps once customers satisfy
their yearly deductibles.  (Id. ¶ 65.)  This means that demand for Tandem's pump is lowest
at the beginning of the year when deductibles reset and then sales generally increase in the
third and fourth quarters when more potential customers meet their insurance deductibles
towards the end of the year.  (Id. ¶¶ 62, 65.)  Defendants refer to this purchasing cycle as
"seasonality."  (See id. ¶ 51.)

In the first quarter of 2022, the Company reported its 2021 earnings and issued its

sales guidance for 2022.  (Id. ¶ 25.)  Tandem projected sales in the range of $845 million to $860 million, including U.S. sales of $630 million to $640 million, and adjusted EBITDA of 14-15% of sales. (Id. ¶¶ 25–26, 31.)  Plaintiffs allege the Company's estimates for 2022 were above analysts' revenue estimates of $827 million, and analysts generally reacted positively to Tandem's year-end earnings and 2022 forecast announcements.  (Id. ¶¶ 26–27.)

During the second quarter of 2022, Tandem reported its financial earnings for the first quarter of 2022.  (Id. ¶ 29.)  Tandem's revenue for the quarter was $175.9 million, beating analyst expectations of $168.2 million.  (Id.)  Tandem identified pandemic-related conditions, such as labor shortages in physicians' offices, as a negative headwind that the Company expected to continue into the second quarter of 2022.  (Id. ¶ 30.)  The Company also revised in financial guidance for the year and increased estimated sales to $850 million to $865 million.  (Id. ¶ 31.)

Plaintiffs allege three significant adverse market conditions ("Three Headwinds") existed during the second quarter of 2022, worsened through the third quarter and the remainder of the Class Period, of which Defendants were aware, but did not disclose to investors or the public.  (Id. ¶ 34.)  The Three Headwinds were (1) pandemic-related conditions, (2) macroeconomic factors, and (3) competition.  (Id.)  Regarding the pandemic, COVID-19 had caused, among other things, absenteeism and staffing shortages in physician offices.  (Id.)  Macroeconomic factors referred to unemployment, inflation, and potential customers' lack of disposable income to spend on new pumps.  (Id.)  And competition existed from new insulin pumps entering the market from Tandem's competitors, specifically Insulet and Medtronic.  (Id.)  In particular, Plaintiffs allege Defendants concealed and materially downplayed the negative market conditions Tandem faced with respect to competition.  (Id. ¶¶ 60–61, 63, 68.)

Plaintiffs' allegations regarding the adverse market conditions rely on statements from two former employees: (1) former employee 1 ("FE1"), a territory manager at Tandem from January 2020 to July 2023 who oversaw salespeople in the northwestern

region of the U.S.; and (2) former employee 2 ("FE2"), a Tandem sales representative who sold Tandem's insulin pumps to customers in Canada.  (Id. ¶¶ 35, 38.)  FE1 allegedly communicated his or her concerns to senior management about the negative and intensifying impact that the Three Headwinds were having on pump sales, but management ignored FE1's warnings.  (Id. ¶¶ 36–37.)  Plaintiffs allege FE2 corroborated FE1's account of the adverse market conditions.  (Id. ¶ 39.)

 On August 3, 2022, at the start of the Class Period, the Company announced its second quarter financial earnings and revised its sales forecast.  (Id. ¶ 41.)  Tandem reported second quarter earnings of $200.3 million, which was below analysts' expectations.  (Id.)  Plaintiffs allege that the Company noted the Three Headwinds negatively impacted revenue, but the Individual Defendants claimed the Headwinds were not unexpected.  (Id.)  Tandem also lowered its 2022 Financial Guidance, decreasing estimated sales to the range of $835 million to $845 million, representing a decrease in U.S. sales to $620 million to $625 million, and lowered adjusted EBITDA to 11% of sales. (Id. ¶ 42.)  At this news, Tandem's stock price fell from $68.97 per share on August 3, 2022, to $58.60 per share on August 4, 2022, a total decline of $10.37 per share.  (Id. ¶¶ 42, 45.)

In September 2022, Tandem participated in two analyst conferences – the 2022 Wells Fargo Healthcare Conference on September 8, 2022, and the Baird 2022 Global Healthcare Conference on September 13, 2022.  (Id. ¶ 46.)  Plaintiffs allege that during the Wells Fargo Conference, Defendants Sheridan and Vossler represented that the Headwinds the Company experienced during the second quarter had been accounted for in its revised guidance and allegedly stated that August sales had fallen back in line with normal seasonality.  (Id. ¶ 47.)   In response to this news, between September 7, 2022 and September 13, 2022, Tandem's stock price increased from $45.65 per share to $56.85 per share.  (Id. ¶ 49.)

On November 2, 2022, the last day of the Class Period, Tandem reported its third quarter revenue and revised its sales guidance.  (Id. ¶ 50.)  Tandem reported revenue of

$205.1 million, which fell below analysts' estimates of $207.6 million.  (Id.)  The Company also decreased its estimated sales to $800 million to $805 million, reflecting a decrease in estimated sales from both inside and outside the United States, and lowered adjusted EBITDA to 7-8% of sales.  (Id.)  On a conference call to discuss its earnings for the third quarter, Defendant Sheridan identified and discussed the impact of the Three Headwinds on revenue and sales.  (Id. ¶¶ 51–52.)  Defendant Sheridan explained that the impact from competition is what the Company expected, but revenues fell below estimates because the "momentum build" of typical purchasing seasonality identified in August did not continue into September.  (Id. ¶ 51.)  Plaintiffs allege analysts reported negatively in response to Tandem's earnings and sales announcement.  (Id. ¶ 53.)  In light of this news, Tandem's stock price declined from $51.34 per share on November 2, 2022 to $36.77 per share on November 3, 2022, a total decline of $14.57 per share.  (Id. ¶ 56.)

On September 8, 2023, Plaintiff Carey Lowe filed a class action complaint against Defendants. [1]  (Doc. No. 1.)  On December 5, 2023, the Court appointed Movants Mason Raines, Thomas O. Martel, and Linna Rae Martel as Co-Lead Plaintiffs and approved their selection of Co-Lead Counsel.  (Doc. No. 8.)  On February 1, 2024, pursuant to the Court's amended scheduling order, (Doc. No. 13), Plaintiffs filed the operative amended complaint.  (Doc. No. 16.)  Plaintiffs allege that during the Class Period, Defendants concealed the true nature and severity of the Three Headwinds, which caused Tandem to miss its third quarter sales targets and reduce its 2022 sales guidance.  (Id. ¶¶ 2–5.)  Plaintiffs allege that Defendants made false and materially misleading statements about the market conditions during the Class Period that caused significant losses to investors.  (Id. ¶ 8.)  The AC alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  (Id. ¶ 10.)  By

---

[1] The original class action complaint also named Brian B. Hansen ("Hansen") as a Defendant.  (Doc. No. 1.)  However, the AC did not name Hansen and he was terminated from the case.  (See Doc. No. 16.)

the present motion, Defendants move to dismiss Plaintiffs' AC for failure to state a claim upon which relief can be granted.  (Doc. No. 21.)

## DISCUSSION

### I.   Legal Standards

#### A. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  In re Alphabet, Inc. Sec. Litig., 1 F.4th 687, 698 (9th Cir. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A complaint is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 556 U.S. at 678).  Courts need not accept legal conclusions as true.  Iqbal, 556 U.S. at 678.  It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679; see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party.  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  However, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).  If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  "A district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Id.

///

6

### B. Heightened Pleading Standard

A complaint alleging fraud must also comply with Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "In other words, the complaint must set forth what is false or misleading about a statement, and why it is false."  <u>Rubke v. Capitol Bancorp Ltd.</u>, 551 F.3d 1156, 1161 (9th Cir. 2009).  Put differently, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  <u>Prodanova v. H.C. Wainwright & Co., LLC</u>, 993 F.3d 1097, 1106 (9th Cir. 2021) (quoting <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009)).

Additionally, a complaint stating claims under Section 10(b) and 20(a) of the Exchange Act and Rule 10b-5 must also satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").  <u>Id.</u> (citing <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 990 (9th Cir. 2009), <u>as amended</u> (Feb. 10, 2009)).  Under the PSLRA, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).  While Rule 9(b) allows intent and "other conditions of a person's mind" to be averred generally, "[t]he PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint 'plead with particularity both falsity and scienter.'" <u>Gompper v. VISX, Inc.</u>, 298 F.3d 893, 895 (9th Cir. 2002) (quoting <u>Ronconi v. Larkin</u>, 253 F.3d 423, 429 (9th Cir. 2001)).  The "PSLRA's heightened pleading requirements are meaningful ones, requiring courts carefully to evaluate securities fraud complaints to ensure compliance with the statute's elevated pleading standards." <u>Nguyen v. Endologix, Inc.</u>, 962 F.3d 405, 413 (9th Cir. 2020).

## II.  <u>Judicial Notice and Incorporation by Reference</u>

Defendants request the Court take judicial notice and consider under the incorporation by reference doctrine the following documents: (1) SEC filings, (Doc. Nos.

21-4, 21-6, 21-8–21-9, 21-14, 21-18); (2) investor/analyst conference call transcripts, (Doc. Nos. 21-5, 21-7, 21-10, 21-12–21-13, 21-15); (3) press releases (Doc. Nos. 21-8, 21-11, 21-18); and (4) analyst reports (Doc. Nos. 21-11, 21-16–21-17).   (Doc. No. 21-19.) Plaintiffs do not oppose Defendants' request.

Judicial notice and incorporation by reference are "exceptions" to the general rule that courts may not consider "matters outside the pleadings" when reviewing a motion to dismiss for failure to state a claim.  Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018).  Under Federal Rule of Evidence 201, courts can take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or can be readily determined by reference to sources whose accuracy cannot reasonably be questioned.  Courts addressing motions to dismiss securities claims routinely take notice of SEC filings, conference call transcripts, analyst reports, and press releases to establish what information was in the public realm, but not for the truth of their contents.  Weston v. DocuSign, Inc., 669 F. Supp. 3d 849, 870–72 (N.D. Cal. 2023) (taking judicial notice of earnings call transcripts, SEC filings, analyst reports, and investor conference transcripts); see also Brodsky v. Yahoo! Inc., 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) ("The Court also grants Defendants' request [for judicial notice] as to . . . press releases, news articles, analyst reports, and third party press releases to which the SAC refers, but not for the truth of their contents.").

Additionally, courts can consider documents under the "incorporation by reference" doctrine when a plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim."  Khoja, 899 F.3d at 1002 (quoting United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003)).  The incorporation by reference doctrine "generally permits courts to accept the truth of matters asserted in incorporated documents," however it does not allow courts "to do so only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint."  Id. at 1014.

The Court takes judicial notice of the SEC filings, (Doc. Nos. 21-4, 21-6, 21-8–21-9, 21-14, 21-18), and press releases (Doc. Nos. 21-8, 21-11, 21-18).  "SEC filings are a

matter of public record and therefore are the proper subject of judicial notice." <u>Cullen v. RYVYL Inc.</u>, No. 3:23-CV-0185-GPC-SBC, 2024 WL 898206, at *4 (S.D. Cal. Mar. 1, 2024). The press releases were each filed with the SEC as attachments to a Current Report on Form 8-K such that the press releases are also matters of public record not subject to reasonable dispute. <u>In re Aqua Metals, Inc. Sec. Litig.</u>, No. 17-CV-07142-HSG, 2019 WL 3817849, at *5 (N.D. Cal. Aug. 14, 2019) (taking judicial notice of press releases).

The Court also takes judicial notice of the analyst reports, (Doc. Nos. 21-11, 21-16–21-17), to consider what information was available to the market at the time of the challenged statements. <u>Reckstin Fam. Tr. v. C3.ai, Inc.</u>, No. 22-CV-01413-HSG, 2024 WL 734497, at *5 (N.D. Cal. Feb. 22, 2024) (taking judicial notice of analyst reports "to determine what may or may not have been publicly disclosed"). Moreover, Plaintiffs cite to these reports by name and rely on them to support their claims that Defendants made false or materially misleading statements regarding the Three Headwinds. (AC ¶¶ 44, 53, 55.) Finally, the Court incorporates by reference the investor/analyst conference call transcripts, (Doc. Nos. 21-5, 21-7, 21-10, 21-12–21-13, 21-15). In the AC, Plaintiffs quote from these conference calls extensively and many of Defendants' allegedly false or misleading statements upon which Plaintiffs base their claims occurred during these calls. (AC ¶¶ 5, 46–47, 51–52, 58–68, 75, 78, 82–83.); <u>Felipe v. Playstudios Inc.</u>, No. 222CV01159RFBNJK, 2024 WL 1380802, at * 6 (D. Nev. Mar. 31, 2024) (incorporating by reference conference call transcripts).

## III. <u>Analysis</u>

### A. Section 10(b) and Rule 10b-5

"To plead a claim under [Section] 10(b) and Rule 10b-5, a plaintiff must allege '(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.'" <u>Endologix</u>, 962 F.3d at 413 (quoting <u>Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.</u>, 774 F.3d 598, 603 (9th Cir. 2014)). "Controlling persons liability under Section 20(a) of the Exchange Act is derivative, such that there is

no individual liability where there is no primary violation of securities law." <u>In re Genius Brands Int'l, Inc. Sec. Litig.</u>, 97 F.4th 1171, 1180 (9th Cir. 2024); 15 U.S.C. § 77o.

As an initial matter, Defendants argue that the Court should not credit the statements of FE1 and FE2 because the statements are neither reliable nor particularized and do not support falsity or any inference of scienter. (Doc. No. 21-1 at 23–25, 30–31.) Defendants contend that even if the Court credits FE1 and FE2's allegations, Plaintiffs failed to allege falsity, scienter, and loss causation with sufficient particularity to satisfy the PSLRA's heightened pleading standards. (<u>Id.</u> at 9–10.) Finally, Defendants assert that Plaintiffs' Section 20(a) claim against the Individual Defendants must be dismissed because Plaintiffs failed to establish a primary securities law violation under Section 10(b) or Rule 10b-5. (<u>Id.</u> at 32.)

### 1.  Former Employee Statements

To establish falsity and scienter, Plaintiffs rely heavily on the statements of FE1 and FE2. (AC ¶¶ 35–40, 60, 63, 68.)  According to Plaintiffs, FE1 and FE2's statements demonstrate that Defendants knew the Company's sales targets for the second and third quarters of 2022 were "not realistic because they did not account for negative sales information being provided [to Defendants] by the Company's sales team," and Defendants' false statements downplayed the impact and intensifying nature of the Three Headwinds to investors. (<u>Id.</u> ¶ 37.) Defendants argue that the Court should disregard FE1 and FE2's statements because they are neither reliable nor particularized and do not support falsity or an inference of scienter. (Doc. No. 21-1 at 23–25, 30–31.)

"[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements." <u>Zucco Partners</u>, 552 F.3d at 995. "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." <u>Id.</u> "Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." <u>Id.</u>  In assessing allegations based on confidential witness statements, courts

look to "the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia." Id.

FE1 "worked on Tandem's sales team as a territory manager between January 2020 and July 2023" and "supervised a team of salespeople in the northeastern region of the United States." (AC ¶ 35.)  FE1 allegedly spoke with Tandem's Sales Operation Analyst, Dawin Guan ("Guan") in the summer of 2022 and explained to Guan that certain adverse market conditions, including inflation, competition, unemployment, and pandemic-related factors had caused a "market pause" (i.e., potential customers were holding off on their purchase of pumps), requiring Tandem to lower its sales targets.  (Id. ¶ 36.)  Plaintiffs allege that FE1 regularly communicated to senior members of management prior to and during the third quarter of 2022 that these adverse market conditions were intensifying and impacting the Company's sales goals, but Tandem did not revise its sales goals in response to FE1's warnings.  (Id. ¶ 37.)

Plaintiffs' allegations regarding FE1 are not sufficiently pled to establish FE1's reliability or personal knowledge.  The Court disagrees with Plaintiffs' argument that FE1's "day-to-day role[] at the Company" gives him or her the requisite personal knowledge to support his or her allegations about general market conditions.  (Doc. No. 22 at 17.)  As a "territory manager" responsible for only one region in the United States, it is not clear how FE1 would have personal knowledge regarding sales in other regions or the general market conditions across the United States.  There are no allegations suggesting that FE1 knew or was able to know or access Tandem's financial reports, forecasting techniques, or other financial data that would implicate how the Company evaluated or discounted the Three Headwinds in creating its sales forecasts and estimates.  See McGovney v. Aerohive Networks, Inc., No. 18-CV-00435-LHK, 2019 WL 8137143, at *10 (N.D. Cal. Aug. 7, 2019) ( "[T]he [complaint] simply does not allege that the [confidential witnesses] had personal knowledge of what matters most in this case—Company-wide financials, the

forecasting process, 4Q17 guidance and events, and the state of mind of [the defendants] at the time the challenged statements were issued."). Accordingly, the AC fails to adequately allege that FE1 was in a position to have the requisite personal knowledge regarding the impact of the Three Headwinds at a company-wide level.

In addition to lacking reliability and personal knowledge, FE1's alleged disclosures regarding his or her concerns about the Three Headwinds to Guan, "senior members of management," a "senior area sales director," and "management and leadership" are too vague and conclusory to support an inference of falsity or scienter. Veal v. LendingClub Corp., 423 F. Supp. 3d 785, 811 (N.D. Cal. 2019) ("[G]enerally implicating 'senior management' is not enough to establish falsity under PSLRA."). No allegations in the AC plausibly connect FE1's alleged disclosures to Guan or other "senior members of management" to the Individual Defendants. Id. at 814 ("None of the [confidential witnesses] had any direct (or indirect) contact with any of the Individual Defendants and therefore cannot provide reliable insight into the Defendants' state of mind.") There are no allegations that connect Guan to the Individual Defendants such as an allegation that Guan relayed FE1's concerns to the Individual Defendants. Accordingly, FE1's alleged disclosures to Guan and other unnamed "senior members of management" do not provide enough insight into the Individual Defendants' states of mind, which is what is needed to suggest a strong inference of scienter. See id.

FE2 was a Tandem "sales representative within a Canadian region" who sold Tandem's insulin pumps to customers. (AC ¶ 38.) Plaintiffs allege FE2 corroborated FE1's account of the adverse market conditions leading up to and continuing during the third quarter of 2022. (Id. ¶ 39.) FE2 "explained that Tandem created sales targets without regard for information from the sales team concerning market conditions. Instead, management set sales targets by devising a number of pumps for each team and salesperson to sell that was greater than the number of pumps sold during the previous quarter." (Id. ¶ 40.) FE2 claims "[t]his method of generating sales targets did not account for the adverse market conditions" in the third quarter of 2022. (Id.)

Like FE1, FE2's statements regarding management's disregard for the adverse market conditions and Tandem's method for setting sales targets are not pled with sufficient particularity to establish FE2's reliability or personal knowledge. Plaintiffs do not plead FE2's dates of employment. Without FE2's dates of employment it is impossible for the Court to determine whether FE2 can report on the events that allegedly occurred during the Class Period with any reliability or personal knowledge. Rudolph v. UTStarcom, 560 F. Supp. 2d 880, 890 (N.D. Cal. 2008) ("At the very least, plaintiff must describe the witnesses' period of employment, what the witnesses' job duties were, their expertise, and how they had access to the information being provided."); Limantour v. Cray Inc., 432 F. Supp. 2d 1129, 1143 (W.D. Wash. 2006) ("The Complaint does not provide the dates of [the confidential witness'] employment. This is a fatal flaw.").[2] Further, the AC does not contain any allegations that establish how FE2 – a sales representative in Canada – would have any personal knowledge of Tandem's sales forecasting within the United States. McGovney, 2019 WL 8137143, at *10.

Finally, FE2's allegations alone do not support falsity or an inference of scienter. FE2's statements do not establish that FE2 would have "reliable personal knowledge of the [Individual Defendants'] mental state." Zucco Partners, 552 F.3d at 998. Plaintiffs do not allege that FE2 had any direct or indirect contact with the Individual Defendants. Veal, 423 F. Supp. 3d at 814. Plaintiffs' conclusory allegations that "FE2 repeatedly warned [the Company] that the [sales] targets were unrealistic in light of then-existing market conditions" may be indicative of a salesperson who felt that their sales goals were difficult to reach, but FE2's statements do not support a strong inference that the Individual Defendants knew or recklessly disregarded the Three Headwinds in setting Tandem's

---

[2] Plaintiffs' opposition includes FE2's dates of employment, but Plaintiffs cannot amend their complaint in an opposition brief. Schneider v. California Dep't of Corr., 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)).

company-wide sales estimates for the second and third quarters of 2022.  See Zucco Partners, 552 F.3d at 998 (finding "generalized claims about corporate knowledge" such as "[defendant] had to have known" or "project managers knew" are not sufficient to create a strong inference of scienter, because "they fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state.").  Moreover, FE2's "negative opinions" of Tandem's method for setting sales targets, are "not statements which are 'themselves . . . indicative of scienter.'"  Espy v. J2 Glob., Inc., No. 22-55829, 2024 WL 1689091, at *5 (9th Cir. Apr. 19, 2024) (internal citations omitted).  Accordingly, the Court affords FE1 and FE2's allegations little weight in evaluating whether Plaintiffs have sufficiently pled falsity or scienter.

## 2.  Materially False or Misleading Statements

To allege an actionable false or misleading statement under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading and, if an allegation regarding the statement or omission is made on information and belief . . . state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u–4(b)(1).  This is a demanding standard, requiring a plaintiff to allege with specificity "contemporaneous statements or conditions," Ronconi, 253 F.3d at 432, that demonstrate both "how and why the statements were false" when made, Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1071–72 (9th Cir. 2008).

"Falsity" is any "untrue statement of a material fact."  15 U.S.C. § 78u–4(b)(1).  It also occurs when a defendant "omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading."  Id.  A complaint must allege both that the statement or omission is misleading and that it is material.  In re Alphabet, 1 F.4th at 699.

Courts apply the "objective standard of a 'reasonable investor'" to determine whether a statement is misleading."  Id. (citing In re VeriFone Sec. Litig., 11 F.3d 865, 869 (9th Cir. 1993)).  Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information" and instead require disclosure "only when necessary 'to

make . . . statements made, in light of the circumstances under which they were made, not misleading.'" <u>Matrixx Initiatives, Inc. v. Siracusano</u>, 563 U.S. 27, 44 (2011) (quoting 17 C.F.R. § 240.10b-5(b)). To be misleading, a statement or omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." <u>Brody v. Transitional Hosps. Corp.</u>, 280 F.3d 997, 1006 (9th Cir. 2002) (citing <u>McCormick v. The Fund American Cos.</u>, 26 F.3d 869, 880 (9th Cir. 1994)). "The materiality of the misrepresentation or an omission depends upon whether there is 'a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available' for the purpose of decisionmaking by stockholders concerning their investments." <u>Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.</u>, 845 F.3d 1268, 1274 (9th Cir. 2017) (quoting <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 231–32 (1988)).

### a. Plaintiffs' Challenged Statements

Here, Plaintiffs allege Defendants made false and misleading statements on three occasions: (1) August 3, 2022, when Defendants adjusted their financial projections for 2022; (2) September 8, 2022, at the Wells Fargo Healthcare Conference; and (3) September 13, 2022, at the Baird Global Healthcare Conference. (AC ¶¶ 57–68.) Defendants assert the challenged statements are not actionable because they are protected forward-looking statements, opinions, or generalized statements of corporate optimism (<u>i.e.</u>, puffery).[3] (Doc. No. 21-1 at 16.) Defendants argue that Plaintiffs failed to plead falsity and claim that none of challenged statements were materially false or misleading when made. (<u>Id.</u> at 20–26.) The Court first reviews the challenged statements.

On August 3, 2022, Tandem issued a press release updating its financial guidance. (AC ¶ 57; Doc. No. 21-8.) In the press release, Tandem decreased its estimated sales

---

[3] At this time, the Court need not determine whether such statements are forward-looking, opinion, or puffery, given that the AC does not adequately allege that the challenged statements were false or misleading when made.

forecast range from $850 million to $865 million to a range of $835 million to $845 million. (Id.)  That same day, Tandem held a conference call where the Individual Defendants discussed the Company's second quarter earnings and outlook for the remainder of 2022. (AC ¶¶ 58, 59; Doc. No. 21-10.)  Plaintiffs allege the updated financial guidance and the Individual Defendants' statements during the call "concealed and materially downplayed the negative market conditions faced by Tandem relating to competition."  (AC ¶¶ 60–61.) Plaintiffs allege the Individual Defendants "represented to investors that the 'headwinds' related to competition were dissipating and the market conditions were returning to normal, which was not true."  (Id. ¶ 60.)  Plaintiffs allege the following statements by the Individual Defendants during the August 3 call were false or materially misleading: "competition in the United States . . . is in line with our expectations," "our data suggests that [the evolving economic environment] began impacting new customers' decisions to purchase a pump," "as these challenges dissipate, we look forward to returning to more normalized growth patterns," the "noise around the competitive launch, particularly right now is more temporary in nature," "we don't see these economic headwinds as anything that would shift people's mindset to a different product just because it has a different reimbursement structure," "we don't think that this has anything to do with competitive dynamics," and "[i]t's really not the competitive issues." (Id. ¶¶ 58–59.)

On September 8, 2022, the Individual Defendants presented at the 2022 Wells Fargo Healthcare Conference and discussed the Three Headwinds affecting the Company's sales. (AC ¶ 62; Doc. No. 21-12.)  Plaintiffs allege the following statements that the Individual Defendants made during the conference were false or materially misleading: "now that we've exited August, we've seen a positive shift in the beginning of a momentum build that really confirms our assumptions in the guidance for the second half of the year," "we factored COVID in . . . [w]e factored the competitive challenges in . . . [t]hese things pretty much occurred as we had anticipated they would. There was no real surprise," and "So we estimate that over the next few quarters that we'll start to see [competitive noise] dissipate. There will still be pressure through the end of the year, but it will start to wane as we get

closer to the end of the year." (AC ¶ 62.) Again, Plaintiffs allege Defendants "created the false impression that Tandem had overcome the negative headwinds" and Tandem was "back on track towards meeting its financial guidance for the year." (Id. ¶ 63.) Plaintiffs allege that FE1, FE2, and analyst commentary corroborates Plaintiffs' allegations that the challenged statements were false and materially misleading. (Id. ¶¶ 63–65.) Plaintiffs allege that "[i]nvestors . . . understood Defendants' [false] statements during the September 8 presentation to mean the competitive 'headwinds' were in line with expectations, dissipating, and would not materially impact the Company's financial earnings going forward." (Id. ¶ 66.)

On September 13, 2022, the Individual Defendants participated in the Baird 2022 Global Healthcare Conference. (Id. ¶ 67; Doc. No. 21-13.) Plaintiffs challenge specific statements made by Defendant Sheridan, including his comments that the Company experienced a "positive shift" in August that represented the "beginning of the momentum build that lines up with the guidance we gave during the call" and his statement that "we think that pretty much lines us up to what we had said in the call regarding guidance for the rest of the year." (AC ¶ 67.) Plaintiffs also challenge Defendant Sheridan's statement that the "level of competition and the effect we're seeing [from competition]" is "what we expected" and "in line with what we expected" and "we think that [competition] will settle down in a quarter or two." (Id.) As allegedly corroborated by FE1 and FE2, Plaintiffs claim that Defendant Sheridan's statements created the "false impression" that the Three Headwinds "were dissipating and that market conditions were returning to normal, which was not true." (Id. ¶ 68.)

Put simply, Plaintiffs argue that the statements from August 3, September 8, and September 13 were false or materially misleading because Defendants falsely reassured investors that the impact from competition was no worse than they had anticipated when issuing their guidance at the beginning of the year. (Doc. No. 22 at 9.) Plaintiffs argue that Defendants ignored members of the sales forces – including FE1 and FE2 – who believed that the Company's 2022 financial goals were unattainable, which shows that

Defendants' statements were false or misleading.  (Id.)  For their part, Defendants argue that when the Court reads the challenged statements in context, Defendants consistently warned investors about the Three Headwinds, rendering Plaintiffs' theory of falsity implausible.  (Doc. No. 21-1 at 20.)  Additionally, Defendants contend that the AC does not contain contemporaneous facts that establish the falsity of Defendants' statements at the time they were made.  (Id.)  The Court agrees with Defendants.  For the reasons below, Plaintiffs failed to adequately plead that the challenged statements were false or materially misleading when made.

The Court reads the challenged statements in the context of the earnings calls.  Bodri v. GoPro, Inc., 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) ("A statement is misleading only if a reasonable investor, reading the statement fairly and in context, would be misled.").  For example, Plaintiffs assert that Defendants' statements that "competition in the United States" was "in line with [the Company's] expectations," (AC ¶¶ 58, 67), competition "was no real surprise," (id. ¶ 62), and "we think that [competition] will settle down in a quarter or two," (id. ¶ 67), were false or materially misleading.  However, reading these statements and others in context, Defendants repeatedly acknowledged the challenges they expected the Company to face from competition, including an expected "pause" in the market that may occur when a competitor releases a new product.  (Doc. No. 21-13 at 7 ("[E]very time a new product comes to market . . . [t]here is pausing.").)  Defendants disclosed and warned investors about the Three Headwinds in the earnings calls and numerous SEC filings.  (See e.g., Doc. No. 21-4 at 14, 23, 28 (explaining the impact and effects of competition, COVID-19, and macroeconomic conditions in Tandem's Form-10K); Doc. No. 21-13 at 6 ("COVID . . . competition and the macro factors . . . those still exist.").)  In their SEC filings, Defendants warned investors about the specific products and competitors Defendants allegedly failed to take into consideration.  (Doc. No. 21-4 at 14 ("We compete in markets worldwide with . . . Medtronic . . . and Insulet . . . ."); (Doc. No. 21-9 at 22 (identifying Insulet's "tubeless delivery system" and Medtronic's "connected insulin pen delivery device" as competitive products that include features Tandem does not).)  Indeed,

Defendants specifically warned investors of the very thing – market pausing – that FE1 and FE2 claim Defendants ignored.  (Doc. No. 21-13 at 7; AC ¶ 36.)

At the beginning of the Class Period, Defendants fully disclosed the Three Headwinds to investors and made clear these would "persist through the end of the year." (Doc. No 21-10 at 11.)  During the September conferences, Defendants identified a "momentum build" and "positive shift" in August sales, but Defendants did not attribute that to a dissolving or dissipating of any of the Three Headwinds as Plaintiffs claim, but rather attributed the uptick in sales to typical seasonality.  (AC ¶ 67; Doc. No. 21-13 at 5 ("[W]e've seen a positive shift. And we think it's the beginning of the momentum build . . .."); Doc. No. 21-12 at 7 ("It's difficult to say if any 1 of the 3 factors that we're taking about is beginning to settle down . . . But I would assume it's just the beginning of the seasonality for the fourth quarter.").)  When Defendants announced in November 2022 that anticipated sales from seasonality did not materialize ("[D]ifferent from years past, the same level of momentum did not continue across September," AC ¶ 51), Defendants again identified the same three market dynamics – COVID-19, macroeconomic factors, and competition – as playing a role in the depressed sales.  (Id. ¶ 52.)  Plaintiffs allege that Defendants finally "came clean" about the impact of competition, but the revelation that the usual uptick in year-end sales failed to materialize does not make the challenged statements from August or September materially false or misleading.  M & M Hart Living Tr. v. Glob. Eagle Ent., Inc., No. CV 17-1479 PA (MRWX), 2017 WL 5635424, at *7 (C.D. Cal. Aug. 20, 2017) ("[I]t is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood.").

Plaintiffs repeatedly allege that Defendants represented to investors that the competitive headwinds "were dissipating" and "returning to normal."  (AC ¶¶ 60, 63, 68.) However, the challenged statements do not support Plaintiffs' allegations.  For example, Defendants' statements in September 2022 that "we estimate that over the next few quarters that we'll start to see [competitive noise] dissipate" and "we think that things will settle down in a quarter or two" does not mean that the competitive challenges were, in fact,

dissipating or settling down.  (Id. ¶¶ 62, 67.) Given the Company's repeated disclosures of the Three Headwinds before, during, and after the Class Period, it is not plausible that a "reasonable investor" would conclude that the challenged statements were false or misleading.  See Bodri, 252 F. Supp. 3d at 924.

Moreover, the Court agrees with Defendants that no contemporaneous facts in the AC show that the challenged statements were materially false or misleading when made. In re Vantive Corp. Sec. Litig., 110 F. Supp. 2d 1209, 1217 n. 14 (N.D. Cal. 2000), aff'd, 283 F.3d 1079 (9th Cir. 2002) ("[P]laintiffs must point to particular contemporaneous facts that establish the falsity of the statement at the time it was made".)  Plaintiffs rely heavily on FE1 and FE2's statements for their theory that Defendants "downplayed or concealed" the impact of competitive pressures.  (AC ¶¶ 60–61, 63, 68.)  However, the AC does not contain sufficient allegations that FE1 or FE2 possessed the requisite reliability or personal knowledge to support falsity.  Furthermore, Plaintiffs' allegation that an analyst report published after the third quarter earnings call in which the analyst opined that competition "is more impactful than [Tandem is] letting on" does not support an inference of falsity either.  (Id. ¶ 54.)  A single analyst's speculative opinion does not provide insight into whether Defendants' statements were false or misleading when made.  City of Sunrise Firefighters' Pension Fund v. Oracle Corp., No. 18-CV-04844-BLF, 2019 WL 6877195, at *15 (N.D. Cal. Dec. 17, 2019) (finding insufficient to support falsity an analyst's conclusory and speculative statements).  In sum, Plaintiffs have failed to sufficiently plead that the alleged misstatements were false or misleading when made.

### 3. Scienter

Next, Defendants challenge the sufficiency of Plaintiffs' allegations with respect to scienter.  (Doc. No. 21-1 at 27–31.)  To adequately plead scienter under the PSLRA, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2).  To allege the requisite scienter, a complaint must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness."  Endologix, 962 F.3d at

414 (quoting <u>Zucco Partners</u>, 552 F.3d at 991). "[D]eliberate recklessness" is more than "mere recklessness or a motive to commit fraud." <u>Schueneman v. Arena Pharms., Inc.</u>, 840 F.3d 698, 705 (9th Cir. 2016) (quoting <u>Zucco Partners</u>, 552 F.3d at 991). It exists when a statement represents "an extreme departure from the standards of ordinary care," which "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." <u>Id.</u> (quoting <u>Zucco Partners</u>, 552 F.3d at 991). Plaintiffs alleging deliberate recklessness need not prove that a defendant "actually knew" their statements were false or misleading, just that they "recklessly turn[ed] a blind eye" to the falsity. <u>In re VeriFone Holdings, Inc. Sec. Litig.</u>, 704 F.3d 694, 708 (9th Cir. 2012).

The "strong inference" standard "present[s] no small hurdle for the securities fraud plaintiff." <u>Schueneman</u>, 840 F.3d at 705. The Court must "engage in a comparative evaluation [and] . . . consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." <u>Tellabs</u>, 551 U.S. at 314. A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." <u>Id.</u> at 324. For the reasons that follow, the AC fails to meet this high burden.

Defendants argue that Plaintiffs have failed to allege a plausible motive, which undermines any inference of scienter. (Doc. No. 21-1 at 27.) The Court agrees. The "lack of plausible motive . . . certainly makes it much less likely that a plaintiff can show a strong inference of scienter." <u>Prodanova</u>, 993 F.3d at 1108. According to Plaintiffs, Defendants were motivated to withhold material information regarding the true impact of the Three Headwinds "to prevent the Company's stock from declining" and "in hopes of being able to rely on future positive earnings results to offset bad news if and when it was ultimately disclosed." (AC ¶ 72.) Plaintiffs further allege that if Defendants had "accurately disclosed the existence and effects of [the Three Headwinds], Tandem's stock price would have declined significantly more over a shorter period of time." (<u>Id.</u> ¶ 73.) However, simply

wanting to avoid a stock decline is "far to common to support an inference of scienter."  In re Peregrine Sys., Inc. Sec. Litig., No. 02CV870-BEN (RBB), 2005 WL 8158825, at *64 (S.D. Cal. Mar. 30, 2005) (collecting cases).  This is especially true when, as here, the AC does not allege the Individual Defendants "sold shares" during the class period or otherwise financially profited from the allegedly deceptive behavior.  Mallen v. Alphatec Holdings, Inc., 861 F. Supp. 2d 1111, 1137 (S.D. Cal. 2012), aff'd sub nom. Fresno Cnty. Employees' Ret. Ass'n v. Alphatec Holdings, Inc., 607 F. App'x 694 (9th Cir. 2015) ("Plaintiffs do not allege that any of the individual Defendants sold shares in the offering or during the Class Period. This lack of stock sales is inconsistent with scienter.").

The AC lacks specific facts as to each Individual Defendant's improper state of mind to support a strong inference of scienter.  See Metzler, 540 F.3d at 1066.  The AC's conclusory allegations that Defendants "were [] aware of and closely monitoring the 'headwinds'" due to "their positions at the Company" as "senior managers and/or directors" of Tandem are not sufficient to support an inference of scienter.  (AC ¶¶ 77, 101–02.)  "[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud."  Metzler, 540 F.3d at 1068.  For the reasons above, the Court does not rely on FE1 or FE2's allegations as they are not indicative of scienter.  (Supra Section III.A.1.)  Neither FE1 nor FE1 had "reliable personal knowledge of the [Individual Defendants'] mental state" to support scienter.  Zucco Partners, 552 F.3d at 998; see, e.g., City of Royal Oak Ret. Sys. v. Juniper Networks, Inc., 2013 WL 2156358, at *9 (N.D. Cal. May 17, 2013) (finding confidential witness with no contact with defendants provided "little, if any, reliable basis from which to infer scienter").  Stripping away FE1 and FE2's allegations, the AC lacks specific allegations that Defendants were aware of or reckless in not knowing any negative information that competition was not "in line" with their prior expectations.

In their opposition, Plaintiffs invoke the core operations theory to support an inference of scienter.  (Doc. No. 22 at 26–28.)  The core operations theory presumes that

"corporate officers have knowledge of the critical core operation of their companies." Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc., 759 F.3d 1051, 1062 (9th Cir. 2014) (internal citation omitted).  Core operations may support a strong inference of scienter under three circumstances:

> First, the allegations may be used in any form along with other allegations that, when read together, raise an inference of scienter that is cogent and compelling, thus strong in light of other explanations . . . . Second, such allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information . . . .. Finally, such allegations may conceivably satisfy the PSLRA standard in a more bare form, without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter.

Id. (quoting S. Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 785–86 (9th Cir. 2008) (internal quotation marks omitted)).  "Proof under this theory is not easy."  Id.

Plaintiffs point to Defendant Sheridan's statement that the Company's "[S]ales force really have active communication dialogue to people who are in the front.  And this is what they're hearing.  It's really not the competitive issues" as evidence that the Company knew or was reckless in not knowing the negative information allegedly being reported by the sales team.  (AC ¶ 59; Doc. No. 22 at 27.)  Plaintiffs' argument that "Defendants cannot point to the sales force as a basis for knowing that competition is not impacting results and then deny knowing that the sales force was saying the exact opposite" rests on the assumption that the allegations of FE1 and FE2 are reliable, particularized, and indicative of falsity.  (Doc. No. 22 at 28.)  For the reasons discussed above, the Court declines to credit the statements of FE1 and FE2.  Taking away FE1 and FE2's allegations, the AC does not contain sufficient factual allegations to suggest that Defendants either knew or were reckless in reporting to investors what the sales force was allegedly hearing with

respect to competition.[4]

Plaintiffs argue that Defendants' reliance on positive information related to Tandem's renewal sales supports a strong inference of scienter.  (AC ¶¶ 74–76.)  Plaintiffs cite to Defendants' statements throughout 2022 regarding Tandem's renewal prospects as evidence of Defendants' "hope[] of lessening or possibly even avoiding the fallout that ultimately ensued."  (Id.)  However, Plaintiffs have not challenged Defendants' renewal statements as false or misleading.  (See id. ¶¶ 57–68.)  Accordingly, these allegations cannot support an inference, let alone a strong inference, of scienter.  Short v. Dondanville, No. EDCV1100615JAKPLAX, 2013 WL 12131544, at *6 (C.D. Cal. June 25, 2013) ("[A]n allegedly true statement . . . does not establish scienter.").

Plaintiffs also argue that Tandem's underperformance relative to its main competitors further supports Plaintiffs' theory of scienter "as it undermines Defendants' claim that 'macroeconomic factors' were responsible for the Company's poor performance."  (AC ¶ 78; Doc. No. 22 at 28–29.)  In the AC, Plaintiffs include a chart showing Tandem's stock price declining relative to its three main competitors and allege that if "macroeconomic factors [had] truly been impacting the insulin pump market, the three companies would have reported earnings results largely in line with one another and, as a result, exhibited similar gains or losses in the stock market."  (AC ¶ 79.)  The Court is not convinced by Plaintiffs' argument that "macroeconomic factors generally impact members of an industry similarly," (Doc. No. 22 at 28), especially considering that members of the same industry have unique products and there are numerous other factors impacting sales even when companies operate in a similar macroeconomic environment.  See Endologix, 962 F.3d at 415 ("[T]he PSLRA neither allows nor requires us to check our disbelief at the door.").

---

[4] Plaintiffs' reliance on S. Ferry LP #2 v. Killinger, 687 F. Supp. 2d 1248, 1258 (W.D. Wash. 2009), is not persuasive.  Unlike here, the court in Killinger determined that "plaintiffs have adequately pleaded [defendants] actual knowledge" to support its reliance on the core operations inference to establish scienter.  Id.

In their opposition, Plaintiffs argue that the Court can infer scienter based on the temporal proximity between Tandem's September 2022 conferences where the Individual Defendants reported a "positive shift" in August sales and the November 2022 downward revision of the Company's 2022 financial forecast. (Doc. No. 22 at 29–30.) It is true that the time between the challenged positive statements and the revelation of truth can be circumstantial evidence of scienter. Fecht v. Price Co., 70 F.3d 1078, 1083 (9th Cir. 1995) ("This shortness of time is circumstantial evidence that the optimistic statements were false when made."). However, without additional particularized allegations supporting fraudulent intent, the Court declines to infer scienter from temporal proximity alone. Yourish v. California Amplifier, 191 F.3d 983, 997 (9th Cir. 1999) ("We have allowed the temporal proximity of an allegedly fraudulent statement or omission and a later disclosure to bolster a complaint . . . but we have never allowed the temporal proximity between the two, without more, to satisfy the requirements of Rule 9(b)." (emphasis in original)).

Finally, the Court reviews all allegations in support of scienter holistically. Prodanova, 993 F.3d at 1112. In assessing whether Plaintiffs have sufficiently pled scienter, the Court must also consider "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 938 (9th Cir. 2003) (internal citation omitted). Based on the foregoing analysis, the AC does not allege a strong inference of scienter. Plaintiffs have not established an inference of intentional or deliberately reckless conduct that is at least as compelling as an inference of nonculpable conduct. The AC's factual allegations, taken as a whole, do not defeat Defendants' competing inference that Defendants reasonably believed in the presence and persistence of the Three Headwinds, but that the Company would achieve its financial goals due to the usual, seasonal uptick in sales that typically begins in the third and fourth quarters. Accordingly, Plaintiffs have failed to adequately plead scienter.

///

### 4. Loss Causation

Defendants argue that Plaintiffs have failed to adequately plead loss causation. (Doc. No. 21-1 at 31–32.)  Because Plaintiffs failed to plead falsity and scienter, the Court does not address the parties' arguments regarding loss causation.  <u>In re Acadia Pharms. Inc. Sec. Litig.</u>, No. 18-CV-01647-AJB-BGS, 2022 WL 36493, at *11 (S.D. Cal. Jan. 3, 2022) (declining to address scienter or loss causation when plaintiffs failed to plead falsity); <u>see also</u> <u>Collins v. Winex Invs., LLC</u>, No. CIV. 08CV51-L (CAB), 2009 WL 861738, at *5 (S.D. Cal. Mar. 27, 2009) ("Because the court finds that Plaintiffs failed to adequately plead scienter, it does not reach the issue . . . of loss causation . . ..").

### B. Section 20(a) Claims

Because the Court dismisses Plaintiffs' underlying Section 10(b) and Rule 10(b)-5 claims, Plaintiffs' Section 20(a) claim also fails.  <u>See</u> <u>Zucco Partners</u>, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b).").

## <u>CONCLUSION</u>

For the reasons above, the Court grants Defendants' motion to dismiss with leave to amend.  <u>See</u> <u>Doe</u>, 58 F.3d at 497 ("A district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").  Plaintiffs may file a second amended complaint curing the deficiencies noted herein within **thirty (30) days** of the date of this Order.

**IT IS SO ORDERED.**

DATED: April 29, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

26